*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Steven Maril,<br><br>      plaintiff,<br><br>—v—<br><br>True Value Company, a Delaware corporation, Cathy C. Anderson, and Amy W. Mysel,<br><br>      defendants. | **2009 C 3050**<br>**2009 C 6161**<br>consolidated<br><br>Judge Feinerman<br>Magistrate Judge Mason<br><br>Jury trial demanded |

**Response to Motion to Compel an Additional Full Day of Deposition for Mr. Maril**

## Statement of Facts

Defendants took the deposition of Mr. Maril on November 30, 2010, starting at approximately 9:00 A.M. and finishing at approximately 4:30 P.M.[1] Mr. Maril did not take a lunch break, offering to go without one to finish the deposition that day, an offer that Tom Bradley, the defense counsel, accepted.[2] Only a few short breaks were taken, and most of them were taken at defense counsel's request for what appeared to be reasons of his own, such as consulting with defendant True Value's current in-house counsel, with defendant Cathy Anderson (a lawyer), and with defendant Amy Mysel.[3]

---

[1] See, Declaration of Jennifer Weiss, attached to this Response as Exhibit A, at ¶4. Compare, defendants' Motion (doc. #60 in case #3050) at ¶9 ("9:15 A.M. to 4:30 P.M.").

[2] See, Declaration of Jennifer Weiss, attached to this Response as Exhibit A, at ¶4. See also, 12/8/2010 e-mail from T. Bradley to D. Lee, attached to defendants' Motion (doc. #60 in case #3050) as Exhibit C, at p. 2 ("I did not stop for lunch, again at Mr. Maril's request.").

[3] See, Declaration of Jennifer Weiss, attached to this Response as Exhibit A, at ¶5.

These few short breaks totaled approximately half an hour, and the deposition, minus breaks, totaled approximately seven hours.[4]

"Fatigue is a pervasive symptom among MS patients", according to the Textbook of Clinical Neurology,[5] and, from mid-afternoon of the deposition on, Mr. Maril was exhausted.[6]

Defendants' Motion does not claim that Mr. Maril or his counsel impeded or delayed in any way defense counsel's deposition examination of Mr. Maril.[7]

Defendants' own chart of deposition topics by pages shows that defendant chose at the very beginning of the deposition to spend over an hour (40 pages of the 278-page transcript, i.e., 14.4% of a seven-hour deposition) on Mr. Maril's attempts to mitigate, even though defendants had extensive interrogatory answers on that point and copies of Mr. Maril's tax returns.[8] Defendants' own chart of deposition topics by pages also shows that defendant chose to spend almost an hour (33 pages of the 278-page transcript, i.e., 11.9% of a seven-hour deposition) on one single conversation Mr. Maril and defendant

---

[4] Id. at ¶4.

[5] Goetz, Textbook Clinical Neurology, Multiple Sclerosis (1999) at p. 975: "Fatigue is a pervasive symptom among MS patients that is not related to disability or depression. Severely affected patients often have a lack of initiative for both physical and mental activity and become easily tired. A diurnal pattern is characteristic and follows the normal circadian pattern of body temperature fluctuations, with the worse symptoms occurring in afternoon hours (peak core body temperature) giving way to improvement in the late evening."

[6] See, Declaration of Jennifer Weiss, attached to this Response as Exhibit A, at ¶6.

[7] See, defendants' Motion (doc. #60 in case #3050).

[8] See, 12/8/2010 e-mail from T. Bradley to D. Lee, attached to defendants' Motion (doc. #60 in case #3050) as Exhibit C, at pp. 1 - 2; Declaration of D. Lee, attached to this Response as Exhibit B, at ¶4.

True Value's General Counsel (the predecessor of defendant Anderson) had when Mr. Maril was hired and on Mr. Maril's experience with that predecessor General Counsel.[9]

Defendants also chose not to provide Mr. Maril with copies of the deposition exhibits ahead of time, contrary to the procedure recommended by the Advisory Committee Official Note, which state: "In cases in which the witness will be questioned about numerous or lengthy documents, it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them".[10]

Defense counsel and Mr. Maril's counsel exchanged e-mails concerning defendants' request for an additional full day to depose Mr. Maril. Defendants' Motion for a Additional Day attached only defendants' side of that e-mail exchange.[11] The full exchange (including plaintiff's side) is attached to this Response.[12]

Defendants claim as a reason for needing an additional day of deposition that, at the deposition, they "learned about a treating physician [Dr. Bikshorn] who was not

---

[9] See, 12/8/2010 e-mail from T. Bradley to D. Lee, attached to defendants' Motion (doc. #60 in case #3050) as Exhibit C, at pp. 1 - 2, referred to in defendants' chart as the allegations of paragraphs 7 and 8 of the federal court complaint. Compare, Complaint (doc. #1 in case #6161) at ¶¶7, 8.

[10] See, Declaration of D. Lee, attached to this Response as Exhibit B at ¶5; Advisory Committee Notes to 2000 amendment to Federal Rule of Civil Procedure 30, subdivision (d).

[11] See, Exhibits B, C, and D to defendants' Motion (doc. #60 in case #3050).

[12] See, Exhibit C, authenticated at Declaration of D. Lee, attached to this Response as Exhibit B, at ¶7.

disclosed previously by Mr. Maril".[13]  In fact, Dr. Bikshorn had been disclosed to defendants more than five months before Mr. Maril's deposition.[14]  In addition, more than five months before Mr. Maril's deposition, defendants subpoenaed Mr. Maril's medical records from the medical practice that Dr. Bikshorn belongs to.[15]

Defendants' Motion also states as a reason why defendants allegedly need an additional full day to depose Mr. Maril that Mr. Maril allegedly had not produced various documents concerning his job search, such as:

- The book "How to Get a Job in Chicago",
- The 2009 Sullivan's Mr. Maril allegedly used to send out resumes,
- The generic cover letter Mr. Maril mailed with his resume,
- Etc.[16]

Defendants' Motion also incorporates as a reason why defendants allegedly need an additional full day to depose Mr. Maril a claim that defense counsel made in e-mail to

---

[13] See, 12/13/2010 e-mail from T. Bradley to D. Lee, attached to defendants' Motion (doc. #60 in case #3050) as Exhibit D.  The allegedly undisclosed treating physician is Dr. Bikshorn.  See, Declaration of D. Lee, attached to this Response as Exhibit B, at ¶6; 12/16/2010 e-mail from D. Kato to D. Lee, attached to this Response as Exhibit D, authenticated at authenticated at Declaration of D. Lee, attached to this Response as Exhibit B, at ¶7.

[14] See, Declaration of D. Lee, attached to this Response as Exhibit B, at ¶6; 6/21/2010 letter from D. Lee to J. Naber, attached to this Response as Exhibit E, at p. 2, authenticated at Declaration of D. Lee, attached to this Response as Exhibit B, at ¶7.

[15] See, letterhead of Northwest Neurology, attached to this Response as Exhibit F, and defendants' subpoena to Dr. Katsamakis of Northwest Neurology, returnable 6/17/2010, attached to this Response as Exhibit G, both authenticated at Declaration of D. Lee, attached to this Response as Exhibit B, at ¶7

[16] See, defendants' Motion (doc. #60 in case #3050) at ¶13.

plaintiff's counsel.[17] In that incorporated e-mail, defense counsel stated that defendants "have not finished the remaining allegations contained in Mr. Maril's Federal Court complaint. Further, although there is factual overlap between the Federal Court complaint and the complaint containing the State Court allegations, [defendants] need to complete Mr. Maril's testimony about the State Court allegations, too. In addition, there is information that [d]efendants need concerning their defenses, both affirmative and otherwise, in this case, and documents that [d]efendants need to show Mr. Maril."[18]

When Mr. Maril relied on Federal Rule of Civil Procedure 30(d)(1)'s limiting a deposition to one day of seven hours and did not agree to produce himself for another full day of deposition, defendants brought this Motion.

## Argument

**The Motion should be denied because defendants have failed to show "good cause" to extend the seven-hour limit of Federal Rule of Civil Procedure 30(d)(1).**

Federal Rule of Civil Procedure 30(d)(1) states:

> **(d)(1) Duration.**
>
> Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

Defendants' Motion does not point to any way in which Mr. Maril or his counsel in any way "impede[d] or delay[ed]" their examination of Mr. Maril at the deposition.

---

[17] See, defendants' Motion (doc. #60 in case #3050) at ¶12, incorporating 12/8/2010 e-mail from T. Bradley to D. Lee (Exhibit C to that Motion).

[18] Id.

Defendants obviously have the transcript of Mr. Maril's deposition,[19] and their Motion does not point to any objections by Mr. Maril's counsel nor to any conduct by Mr. Maril or his counsel that in any way impeded or delayed the deposition.

Further, the Advisory Committee's official note places the burden on the defendant to show good cause for an extension, stating: "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." See, Advisory Committee Notes to 2000 amendment to Federal Rule of Civil Procedure 30, subdivision (d). The Advisory Committee official note lists as examples of good cause for extending the seven-hour limit on depositions such things as the witness needing an interpreter, the lawyer for the witness wanting to examine the witness, and expert witnesses. Id. Nothing like these examples of "good cause" exist in this case.

Quite the contrary, defendants' attempts to show "good cause" for a full additional day to examine Mr. Maril show how weak defendants' Motion is. Defendants' claim that there was a previously undisclosed treating physician in no way amounts to "good cause" because defendants' claim is simply factually wrong: that treating physician was disclosed over five months before Mr. Maril's deposition and Mr. Maril's medical records with that treating physician's medical practice were subpoenaed by defendant over five months before Mr. Maril's deposition. Nor is the alleged non-production of such background job-search materials as the book "How to Get a Job in Chicago", the 2009 Sullivan's Mr. Maril used for the addresses he sent resumes to, the

---

[19] See, 12/8/2010 e-mail from T. Bradley to D. Lee, attached to defendants' Motion (doc. #60 in case #3050) as Exhibit C, at pp. 1 - 2.

generic cover-letter Mr. Maril mailed with his resume, etc., "good cause". Defendants totally failed to explain why they need an additional full day to examine Mr. Maril on such background job-search materials as "How to Get a Job in Chicago". Further, "Sullivan's" is listing of lawyers, corporate law departments, etc., in the Chicago area and the State of Illinois. Most lawyers – especially those at large firms, such as defense counsel in this case – have a copy sitting on their desks. Sullivan's is also available for free at many law libraries throughout downtown Chicago. Indeed, defendants failed to point to any document request that covered such background job-search materials as "How to Get a Job in Chicago" and "Sullivan's", and, if the alleged non-production of such background job-search materials justifies an additional full day of deposition, then the Rules might as well just state that plaintiffs in employment cases can be examined for two full days.

      Clearly, the real reason that defendants want another full day is that they have many more questions they would like to ask Mr. Maril. However, the seven-hour limit on depositions, like the similar limit on the number of interrogatories, imposes choices on lawyers, and, as the Advisory Committee Notes make clear, technical discovery relevance is no more the test of extending the seven-hour limit than it is of increasing the number of interrogatories. Were technical discovery relevance the test for increasing the number or interrogatories or for extending the seven-hour limit of a deposition, those limits would be meaningless against a lawyer of even minimal competence, let alone against an excellent lawyer such as defense counsel in this case.

      In short, defendants – knowing full well of the seven-hour limit – made the tactical choice to spend precious time on such low-value topics as attempts to mitigate

and conversations in the hinterlands of this case and now seek to be bailed out of the consequences of their tactical choices by Your Honor. However, absent a much more compelling showing than defendants have made here, the seven-hour limit is a meaningful one. Mr. Maril should not be required to travel from his home in the suburbs to defense counsel's office in downtown Chicago and to sit through another full day of an exhausting deposition, defendants should not be bailed out of the consequences of their own tactical choices, and defendants' Motion should be denied.

## Conclusion

For these reasons, defense counsel's Motion to Compel an Additional Full Day of Deposition should be denied.

Steven Maril,<br>
Plaintiff,

By:     s/David L. Lee<br>
        David L. Lee

**Proof of service**: David L. Lee, an attorney, certifies that service of this Response to Motion to Compel Additional Full Day of Deposition on defendants was accomplished by ECF on January 7, 2011.

    s/David L. Lee<br>
    David L. Lee

David L. Lee
ARDC #1604422
LAW OFFICES OF DAVID L. LEE
53 W. Jackson Blvd., Suite 505
Chicago, IL 60604-3437
d-lee@davidleelaw.com
312-347-4400